1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10         SAN JOSE DIVISION

11

12 | CHUCK DOZIER dba VENTURE          )      Case No.: C- 05-1761  PVT
   | FURNITURE SOLUTIONS               )
13 |                                   )      **ORDER GRANTING MAISPACE'S**
   |                                   )      **MOTION FOR PARTIAL**
   |            Plaintiff,             )      **SUMMARY JUDGMENT AND**
14 |                                   )      **GRANTING IN PART AND**
   |      v.                           )      **DENYING IN PART WACKER'S**
15 |                                   )      **MOTION FOR SUMMARY**
   | MAISPACE, a Michigan Corporation, )      **JUDGMENT**
16 | and DAN WACKER, an individual,    )
   |                                   )
17 |            Defendants.           )
   |                                   )
18

19 **I.      INTRODUCTION**

20          This case involves contractual arrangements for the sales of furniture.  Plaintiff Chuck

21 Dozier ("Dozier") and Defendant and Counterclaimant Dan Wacker ("Wacker") were partners in

22 Venture Furniture Solutions ("VFS.")[1]   VFS was a sales representative for Defendant

23 ("Maispace.").  Prior to working with Maispace, VFS represented Macsys, a company no longer

24 in business.  At the end of 2003, Wacker left the VFS partnership, but continued to sell Maispace

25 products to certain VFS clients.

26          Dozier's claims against Maispace involve commissions paid to Wacker after he left VFS

27

28 ――――――――
   [1]The holding of this court is limited to the facts and the particular circumstances underlying
   the present motion.

and an alleged promise by Maispace to pay for obligations Macsys owed VFS.  Dozier's claims against Wacker involve his sales of Maispace products to customers in VFS's territory, allegedly in breach of the VFS partnership termination agreement.  Wacker's crossclaim against Dozier also alleges a breach of the VFS termination agreement.

On January 9, 2007, the court held a hearing on Defendant Maispace's Motion for Partial Summary Judgment and Defendant Dan Wacker's Motion for Summary Judgment.  Based on the briefs and arguments presented,

IT IS HEREBY ORDERED that Maispace's Motion Is Granted and Dan Wacker's Motion Is Granted in Part and Denied in Part as follows.

II.     FACTUAL BACKGROUND

A.     Promise to Pay Macsys Debt

In 1999, Dozier and Wacker formed VFS with a written partnership agreement.  From 1999 to 2000, VFS represented Macsys.  When Macsys went out of business on December 31, 2002, there were outstanding sales orders which would have resulted in commissions to VFS if the orders had been filled.  Dozier claims Macsys owed VFS $103,454.86  in commissions owed and potential commissions.  (Dozier Decl. ¶ 13.)  Bob Spradlin ("Spradlin"), the General Manager of Macsys, became the General Manager of Maispace when it was formed in early 2003.  (Spradlin Decl. ¶ 2-3).  In March 2003, Spradlin contacted VFS about selling for Maispace.  (Dozier Decl. ¶ 15).

Dozier alleges that Spradlin expressly promised that Maispace would pay the entire debt of Macsys.  Dozier's testimony on this crucial point is not entirely consistent.  In his declaration in opposition to summary judgment, Dozier states that the promise was made in March, 2003 when Spradlin contacted VFS about selling Maispace products.  (Dozier Decl. ¶ 15.)  At his deposition, Dozier testified that the promise was made in the October, 2003 time frame and previously, but **after** VFS started doing business with Maispace.  (Dozier Depo Tr. at 52:21-

//

//

//

1  53:18-20, Lee Decl. Exh. 1.)[2]

2       Maispace disputes that it promised to repay any debt.  Instead, Maispace claims that it

3  promised, in recognition of uncompensated efforts for Macsys, it would pay VFS additional

4  compensation when it could.  (Wacker Decl. ¶ 4, Spradlin Decl. ¶ 5.)   It is undisputed that in

5  May, 2003 Maispace paid VFS $7,769 and in July, 2004 Maispace paid VFS $35,909.  (Dozier

6  Decl. ¶¶ 16, 28, Spradlin Decl. ¶ 7).  The parties dispute whether these payments were in

7  response to a promise by Maispace to repay the Macsys obligation.  Dozier claims that the entire

8  $7,769 and approximately half of the $35,909 was due to the promise to repay the Macsys

9  obligation.  Spradlin claims that the $7,769 was to help VFS weather a financial crisis and the

10 $35,909 was a commission for the sale to Pulte Homes.  (Spradlin Decl. ¶ 7, Spradlin Depo. Tr.

11 at 41-43, Lee Decl. Exh. 3.)

12       **B.      Wacker Departure from VFS**

13       In September 2003, Wacker informed Dozier and Spradlin that he was moving away

14 from California.  (Wacker Decl. ¶7, Spradlin Decl. ¶ 8.)  Wacker and Dozier exchanged emails

15 about the terms of the separation from the partnership.  (Wacker Decl. Exhs B-E)  It is

16 undisputed that the parties agreed upon certain terms of the termination agreement but did not

17 reach agreement as to whether Wacker could continue to work with customers on accounts for

18 which the customers would not work with Dozier.  Dozier claims that the terms of his last e-mail

19 to Wacker stating his position that such sales were not allowed govern because Wacker never

20 responded to that email.  Wacker claims that he continued to work with two clients who refused,

21 despite his best efforts, to work with Dozier.  Dozier disputes that the clients would not work

22 with him.

23       Dozier claims that Wacker admitted that he was not free to do any work in Northern

24 California without Dozier's permission.  As proof, Dozier cites repeatedly to the following

25 portion of  Wacker's deposition testimony:

26

27 _____

28   [2] The First Amended Complaint alleges that the promise was made in October, 2003 when
   Maisapce entered into the written agreement.  (First Amended Complaint, ¶¶ 6, 42.)

1
2
3
4
5
6
7
8
9
10

> Q.  And pursuant to the separation agreement, whatever that –
> whatever job you did with any of the dealers in northern
> California, was it your understanding that you split commission
> with Chuck,75/25?
> A.  Not once the partnership ended.
> Q.  What you are saying is you are free to do any work in northern
> California, with or without Chuck Dozier's permission?
> A.  No, I'm not saying that.
> Q.  Then what are you saying?
> A.  What I'm saying is that every single dealer that you see listed
> here that were my more intimate dealers, as well as any other
> dealers I worked with, were strongly encouraged to work with
> Chuck, which is why you see HB Contract is one of the dealers for
> me to keep.  When they called me, I got them to work with Chuck.
> With Creative Support, I got them to work with Chuck.  With
> Work Stations and More, I got them to work with Chuck.  With
> AA Office, I got them to work with Chuck.  There are two dealers
> who categorically refused to work with him.  So, I did not solicit
> either of them.  The came to me because they felt they could not
> get the support they needed from the remaining partner of Venture.

11
12  (Deposition of Dan Wacker, 38:13-39:13, attached to Declaration of Haeyoung Lee as Exhibit

13  2).

14      **C.      Written Sales Representation Agreement**

15      On October 16, 2003, after Wacker's departure, Maispace sent VFS a written Sales

16  Representation Agreement.[3]  (Spradlin Decl. ¶ 10.)  The contract provides that other agents may

17  sell Maispace furniture in Northern California, subject to Maispace's obligation to pay VFS

18  commissions on such sales.  (Spradlin Decl. Exh A at ¶ 1.1).  The contract also provides:

19      This Agreement sets forth the entire agreement of the parties and fully integrates
20      all oral and written communications between the parties and may not be amended
        or modified except in writing signed by both of the parties.  Neither party shall be
21      bound by any agent's nor employee's representations,  promises, or inducements
        of the other party not set forth in the agreement.

22  (*Id.* at ¶11.1).  The agreement does not mention any Macsys debt.

23      In the Summer of 2004, Maispace and VFS signed an addendum to the Sales

24  Representation Agreement.  (Dozier Decl. Exh. 5.)  The addendum provided for additional bonus

25  compensation for sales.  Dozier claims that he informed Spradlin that he was dropping other

26  lines of furniture to concentrate on Maispace products and to meet the goals to receive the bonus.

27

28      [3]  There is no evidence that either side ever signed the original contract.  However, both sides
    signed an addendum to the contract and neither side contests the validity of the original contract.

1  (Dozier Decl. ¶ 26.)

2  **III.    DISCUSSION**

3         **A.      Legal Standards**

4         Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

5  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

6  to any material fact and that the moving party is entitled to a judgment as a matter of law."

7  Fed.R.Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a

8  genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  However, the

9  moving party has no burden to negate or disprove matters on which the non-moving party will

10  have the burden of proof at trial.  The moving party need only point out to the court that there is

11  an absence of evidence to support the non-moving party's case.  *Id.* at 325.   The burden then

12  shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue

13  for trial.'"  *Id.* at 324 (quoting Rule 56(e)).  To carry this burden, the non-moving party must "do

14  more than simply show that there is some metaphysical doubt as to the material facts."

15  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).; there must

16  be evidence on which the jury could reasonably find for the [non- moving party]." *Anderson v.*

17  *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

18         Summary judgment cannot be granted where a genuine dispute exists as to any material

19  fact.  Fed. R. Civ. P.  56(c).  A "material" fact is one which might affect the outcome of the case

20  under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

21  about a material fact is genuine if a reasonable jury could return a verdict for the non-moving

22  party.  *Id.* At 252 ("The mere existence of a scintilla of evidence . . . will be insufficient .")

23  Additionally, summary judgment can only be opposed by facts that "would be admissible in

24  evidence."  Fed. R. Civ. P. 56(e); see also *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091

25  (9th Cir. 1990).  In deciding a motion for summary judgment, a court must view the evidence in

26  the light most favorable to the non-moving party, and draw all justifiable inferences in its favor.

27  *Anderson,* 477 U.S. at 255.  Moreover, "[c]redibility determinations, the weighing of the

28  evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of

1    a judge [when] he is ruling on a motion for summary judgment." *Id.*; *see also Harris v. Itzhaki*,

2    183 F.3d 1051 (9th Cir. 1999).

3    **B.    Maispace's Motion for Summary Judgment**

4    Maispace is moving for summary judgment on Dozier's claims for Fraud and Negligent

5    Misrepresentation.[4]  In the First Amended Complaint, Dozier alleges that when Maispace

6    entered into the October 2003 Agreement, Maispace falsely represented that it would pay the

7    Macsys debt, pay commissions on time, and pay commissions only to VFS.  (First Amended

8    Complaint ¶¶ 6, 42.).  Dozier explains in Opposition to Summary Judgment that his fraud claim

9    is based on two alleged misrepresentations: 1) a promise to pay Macsys' debt; and 2) a

10   concealment of commissions paid to Wacker.

11                    1.    Fraud by Misrepresentation Claim

12   The elements of fraud are: (1) a misrepresentation or promise without intent to perform;

13   (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting

14   damage.  *See Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). "To maintain an action for

15   deceit based on a false promise, one must specifically allege and prove, among other things, that

16   the promisor did not intend to perform at the time he or she made the promise and that it was

17   intended to deceive or induce the promisee to do or not do a particular thing." *Tarmann v. State*

18   *Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (1991); *see also Conrad v. Bank of America*,

19   45 Cal.App.4th 133, 156 (1996) (Defendant must intend to induce a particular act of the plaintiff

20   and is not liable in fraud for unintended consequences.)

21                    a.    There is No Evidence of Intent not to Perform

22   Maispace argues that Dozier has produced no evidence of an intent not to perform at the

23   time the promise was made.  Dozier provides the following as evidence of intent not to perform:

24   1) After the first payment, Maispace made no payments on the debt for over a year; and 2)

25   Maispace denied that an alleged overpayment of commissions on the sale to Pulte Homes  was in

26

27        [4]  Maispace is not moving for judgment on Dozier's contract claims because it admits there
     are genuine disputes as to material facts.  Dozier has dismissed his claim against Maispace for
28   Conspiracy.

1    payment for the Macsys debt.  Failure to attempt to perform a promise can be evidence of lack of

2    intent at the time the promise was made.  *Locke v. Warner Bros., Inc.* 57 Cal.App.4th 354, 367

3    (1997), citing *Tenzer v. Superscope*, 39 Cal.3d 18 (1985).  However, in this case, Dozier is not

4    alleging that Maispace failed to attempt to perform.  Dozier asserts that Maispace made two

5    payments based on the promise to pay VFS for work done for Macsys.  Thus, there is no

6    evidence of a failure to attempt performance.

7          Dozier argues that Maispace cannot assert both that it made no such promise and that the

8    payments are evidence of intent to perform the promise.  Maispace, however, is not arguing that

9    the payments are evidence of intent to perform the promise Dozier is alleging.  Instead,

10   Maispace is arguing that Dozier has no evidence of lack of intent to perform.  Dozier argues that

11   Maispace's  failure make payments for over a year is a failure to attempt to perform, which is

12   proof of a lack of intent to perform.  Maispace counters that the payments made preclude Dozier

13   from arguing that Maispace failed to attempt to perform.  Maispace's argument is that Dozier

14   cannot claim a promise to pay, payments received on the promise, and a failure to attempt

15   performance.  Additionally, there is nothing inconsistent in Maispace's position.  Maispace

16   denies that it promised to pay for obligations almost incurred by Macsys.  Instead, Maispace

17   alleges that it would provide extra compensation to VFS on Maispace sales when funds were

18   available.  (Spradlin Decl. ¶ 5.)  Thus, it is not inconsistent for Maispace to assert that payments

19   were made while disputing a promise to pay for obligations almost incurred by a separate

20   company.  Moreover, nothing precludes Maispace from arguing that, assuming for the purposes

21   of this motion that the promise was made, the claim must still fail because there is no evidence of

22   intent not to perform.

23         Dozier's second argument that Maispace's denial that the Pulte Sale commission was

24   related to the Macsys debt is proof of intention not to pay also fails because it has no relation to

25   intention at the time the promise was made.  Indeed, Dozier argues that Spradlin's testimony

26   "makes it crystal clear that Maispace had no intention to pay any remaining balance of the

27   Macsys debt" (Opp. at 8:25-26.)  The question is not Maispace's intention to pay more money

28   after July, 2004; it is Maispace's intention at the time the alleged promise was made.

1    Accordingly, there is no admissible evidence of intent not to pay the Macsys debt.[5]

2                  b.      There is No Admissible Evidence of Intent to Induce Reliance or
3                          Justifiable Reliance

4    Dozier has not specified what actions he took in reliance on the alleged

5    misrepresentation.  The First Amended Complaint states only that Maispace made the

6    representation "with the intent to defraud and induce plaintiff to act as he did" and that had

7    Plaintiff "known the truth, he would not have performed as he did."  (First Amended Complaint

8    ¶ 44.)  Dozier does not specify what acts he allegedly took in reliance on the alleged

9    misrepresentation.   In Opposition, Dozier states: "In reliance on the continued payment of

10   Macsys' debt and exclusive representation, Dozier put energy, effort money [sic] into

11   continuously marketing and sell [sic] Maispace  product by dropping other lines."  (Opp at 11.)

12   Thus, Dozier may be asserting that he dropped other lines in reliance on the promise to

13   pay Macsys' debt.  However, Dozier declares that he made the decision to drop other lines in

14   order to receive the bonus promised in June 2004.  Thus, the decision to drop other lines could

15   not be in reliance on the alleged misrepresentation as to the Macsys debt.

16   In short, Dozier neither specifies nor produces any evidence of actions he took in reliance

17   on the alleged misrepresentation.  Similarly, Dozier produces no evidence that Maispace

18   intended Dozier to take any (unspecified) action.

19                  c.      There is No Admissible Evidence of  Damage

20   Dozier alleges he told Spradlin in June 2004 that he would drop "several other lines to

21   concentrate on Maispace product."  (Dozier Decl. ¶ 26.)  Even assuming that the lines were

22   dropped because of the Macsys promise, Dozier does not allege sales lost because of dropped

23   lines.  Dozier does allege that he had to close the business, but there is no calculation of any

24   "close the business" damages in responses to interrogatories.  (Simmonds Decl. Exh. A at 4-5.)

25

26        [5]The First Amended Complaint alleged that Maispace falsely represented that it would pay
     commissions on time and bonuses under the addendum.  Dozier appears to have abandoned this
27   allegation in opposition to summary judgment.  Because Dozier has produced no evidence that
     Maispace did not intend to pay commissions and bonuses as required, the grant of summary
28   judgment includes fraud based upon an alleged false promise to pay commissions and bonuses as
     required by contract.

1  Moreover, Plaintiff's expert witnesses report only contains calculations for commissions owed

2  and does not calculate any close of business damages.  (Simmonds Supp. Decl. ¶ 2.)

3      Because there is no admissible evidence of intent not to perform, intent to induce

4  reliance,  justifiable reliance, or resulting damage, summary judgment is granted as to the fraud

5  claim.

6              2.      Fraud by Concealment Claim

7      The elements of an action for fraud and deceit based on concealment are: (1) the

8  defendant must have concealed or suppressed a material fact, (2) the defendant must have been

9  under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally

10  concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must

11  have been unaware of the fact and would not have acted as he did if he had known of the

12  concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact,

13  the plaintiff must have sustained damage.  *Marketing West, Inc. V. Sanyo Fisher (USA) Corp.*, 6

14  Cal.App.4th 603, 612-13 (1992).

15

16          a.      Plaintiff Requires Leave of Court to Amend His Complaint to
                    State a Fraud by Concealment Claim

17      Dozier asserts that Maispace concealed payments of commissions to Wacker and that if

18  he had known of the payments, he would not have dropped other furniture lines to concentrate on

19  Maispace.  As discussed above, this allegation is not contained within Dozier's First Amended

20  Complaint.[6]  Dozier argues that under liberal notice pleading rules, the complaint's mention of

21  fraud is sufficient to cover any claim related to fraud.  However, the complaint mentions fraud

22  from a misrepresentation when Maispace and VFS entered into the October 2003 Agreement.

23  (First Amended Complaint ¶¶ 6, 42.)  Dozier's newly minted concealment claim asserts

24  concealment of the payments to Wacker in 2004.  Thus, it is a different fraud at a different time

25  than alleged in the Complaint.  Accordingly, Dozier would need leave of court to amend his

26

27      [6]The First Amended Complaint  was the active Complaint when the case was removed to
    Federal Court.  Plaintiff has not argued that the Original Complaint  contained a fraud by

28  concealment claim.

1    complaint to state this cause of action.

2              b.    Plaintiff Must Show Good Cause to Modify the Case Management
3                    Order

4          On August 31, 2005, the Court issued a Case Management Order (the "Order") pursuant

5    to Rule 16 of the Federal Rules of Civil Procedure.  The Order states that the deadline for

6    amendments to the pleadings is sixty days from the date of the Order, a date long since passed.

7    The Order also adopts the parties' statement of disputed factual and legal issues as set forth in

8    the Case Management Conference Statement.  The Case Management Conference Statement sets

9    forth a dispute as to what false representations, if any, were made when Maispace entered into

10   the sales representation agreement and addendum.  (Statement at p. 4.)  The Statement contains

11   no reference to any concealment.

12         Rule 15(a) of the Federal Rules of Civil Procedure, provides that leave to amend

13   pleadings "shall be freely given when justice so requires."  Fed. R. Civ. P. 15.  However, once a

14   district court has issued a scheduling order pursuant to Rule 16 which establishes a timetable for

15   amending pleadings, the liberal standards of Rule 15 no longer govern.  *Johnson v. Mammoth*

16   *Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).  Under Rule 16, "A schedule shall not be

17   modified except upon a showing of good cause . . ."  Fed. R. Civ. P. 16(b).  Thus, Dozier must

18   show good cause to be allowed to amend his pleadings.  Under Rule 16, good cause is measured

19   by the diligence of the party seeking the amendment.  *Johnson*, 975 F.2d at 609.  This case has

20   been pending in federal court since April of 2005.  Expert reports have already been exchanged.

21   Dozier has not provided any reason, no less good cause, for the failure to move in a timely

22   fashion to amend his complaint or any reason why the deadline in the Order should be extended.

23   The only argument Dozier has made is that Maispace should have moved under Rule 12 if it

24   thought the complaint was deficient.  However, because Dozier first mentions fraud by

25   concealment in opposition to summary judgment, Defendants had no reason to challenge

26   whether the complaint was specific enough to cover this entirely different cause of action.

27             c.    Plaintiff Cannot Show Amendment Is In the Interests of Justice

28         Even under the liberal standard of Rule 15, leave to amend would be denied.  Four

1   factors are commonly used to determine the propriety of a motion for leave to amend: bad faith,

2   undue delay, prejudice to the opposing party, and futility of amendment.  *DCD Programs, Ltd. v.*

3   *Leighton*, 833 F.2d 183,186 (9th Cir. 1987).   In this case, the timing of the assertion of a new

4   claim, in opposition to summary judgment, leads to the conclusion that there has been undue

5   delay causing prejudice.  Additionally, amendment would be futile because Dozier has not

6   submitted any admissible evidence of intent to induce reliance or damages.

7          Dozier claims "Maispace clearly had the requisite ntent [sic] to defraud Dozier for their

8   monetary gain." (Opp. At 10:9-10)  However, summary judgment can only be opposed with

9   admissible evidence.   Fed. R. Civ. P. 56(e); see also *Skillsky v. Lucky Stores, Inc.*, 893 F.2d

10  1088, 1091(9th Cir. 1990).  Assertions in pleadings are not evidence.  Thus, Dozier has not

11  provided any evidence of intent to induce reliance.  Moreover, the only possible action Dozier

12  could be alleging is the dropping of other lines.  Dozier has not submitted any evidence that

13  Maispace took any action that was intended to cause Dozier to drop other lines.

14         Similarly, Dozier has provided no evidence of damage from concealment.  Dozier argues:

15  "Of course, had Dozier  known the fact that not all commissions in Northern California territory

16  would not [sic] be paid to him, he would not have concentrate [sic] on Maispace line by

17  dropping other lines and by continuing to spend time, effort and money as he did."  (Opp. at 10).

18  However, Dozier's answers to interrogatories and his expert's report on damages do not disclose

19  any calculation of damage from not carrying other lines. (Simmonds Decl. Exh. A; Simmons

20  Supp. Decl. ¶ 2.)  Finally, as  Maispace argues,  Dozier's claims for commissions were not

21  caused by any alleged concealment (or misrepresentation), but by an alleged breach of the

22  contract. Accordingly, Dozier has not provided any evidence of damage from dropping other

23  lines.

24         In short, Dozier is denied leave to amend the complaint to state a fraud by concealment

25  claim because he has shown no good cause to amend the deadline in the Order and amendment

26  would not be in the interests of justice.

27              3.    Negligent Misrepresentation Claim

28         Negligent misrepresentation requires: 1) a representation about a past or existing material

fact that was untrue; 2) and made without any reasonable ground for believing it to be true, 3) with the intent to induce reliance, 4) actual reliance and 5) damages.  *See Shamsian v. Atlantic Richfield Co.*, 107 Cal.App.4th 967, 983 (2003).  The elements of a cause of action for negligent misrepresentation are the same as those of a claim for fraud, with the exception that the defendant need not actually know the representation is false; it is sufficient to allege that the defendant lacked reasonable grounds to believe the representation was true.  *See Neilson v. Union Bank of California, N.A*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).  Making a promise with an honest but unreasonable intent to perform cannot be construed as a misrepresentation concerning past or existing material facts, and therefore does not constitute a basis for a negligent misrepresentation claim. There is no tort of negligent false promise. *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 159 (1991).

Dozier has alleged only promises as misrepresentations.  Accordingly, summary judgment must be entered on this claim.

### C.    Wacker's Motion for Summary Judgment on Dozier's Claims

Wacker is moving for Summary Judgment on Dozier's claims for 1) Breach of Contract 2)  Breach of the Implied Covenant of Good Faith and Fair Dealing; 3) Fraud; 4) Negligent Misrepresentation; 5) Intentional Interference with Contract and 6) Unfair Competition.[7]

#### 1.    Breach of Contract

As discussed above, the parties reached agreement on some, but not all of the terms of the termination agreement.  A cause of action for breach of contract requires the formation of a valid contract.  Dozier argues that the terms he proposed to Wacker in the last email between them regarding the termination agreement are the terms of the agreement.  Dozier appears to argue that Wacker's failure to affirmatively reject the terms binds Wacker to those terms.  However, Dozier's last email rejected the terms of Wacker's email and proposed new terms.  Thus, it was a counteroffer.  There is no evidence that the counteroffer was accepted.  Without

[7]Dozier has dismissed his claims for Misappropriation of Trade Secrets, Conversion, and Conspiracy.  Thus, Wacker is moving for summary judgment on all claims currently pending against him.

acceptance, there is no contract.  *Russell v. Union Oil Co.*, 7 Cal.App.3d 110 (1970).  Silence is not acceptance absent a prior course of conduct that requires a party to act or be bound.  *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002).  There is no evidence of any duty binding Wacker to dispute the email or be bound by the terms within it.  Accordingly, the terms of Dozier's last email did not become the terms of the agreement.

Dozier argues that Wacker's deposition testimony that he was not free to make any sales he wanted is evidence that the parties did reach agreement on this issue.  The deposition testimony, however, is not inconsistent with Wacker's assertion that he was free to work with clients that would not work with Dozier.  While Wacker admits that he was not completely free to do what he wants, he does not admit that he was not free to do any work at all.  Nonetheless, this testimony does raise a question as to the extent of Wacker's freedom.  Although it is an extremely close call, the court cannot say that no reasonable jury would infer that Wacker was barred from selling Maispace in VFS's sales territory.  Because the summary judgment standard is a difficult one, the court is constrained to deny summary judgment on this claim.

### 2.    Breach of the Implied Covenant of Good Faith and Fair Dealing

"The covenant of good faith and fair dealing requires that neither party to a contract will take action to injure the right of the other party to receive the benefits of the agreement." *Rodriguez v. International Business Machines*, 960 F. Supp. 227, 232 (1997).  As discussed above, there is some evidence, albeit only a small amount, that Wacker was not free to make sales in VFS' territory.  Accordingly, summary judgment is denied on this claim.

### 3.    Fraud

Dozier explains that his fraud claim against Wacker is based on concealment.  The First Amended Complaint alleges that "When Defendant Wacker left the partnership of VFS Defendant made representations that all rights and interests of VFS should remain with plaintiff except a few commissions for a limited period of time." (First Amended Complaint ¶ 48.) Dozier now attempts to assert a claim based on *concealment* of payments *after* he left VFS. Thus, Dozier attempts to assert a wholly different cause of action than the one plead and, therefore, he needs leave of court to do so.  As discussed above, the undue delay and prejudice

1   weigh heavily against granting such leave.  Additionally, the case management statement,

2   adopted by the case management order, contains only the disputed issue of "What false

3   representations, if any, were made by Wacker to Dozier, in connection with withdrawing from

4   VFS?"  There is no disputed issue as to concealment by Wacker.  Moreover, the leave to amend

5   would be futile here as well.

6                              a.       There is No Evidence of Concealment

7           Dozier argues that Wacker concealed the fact that he was working with Steve Wolf and

8   Barbara Miles after he left VFS.  Dozier does not even allege concealment, he merely asserts that

9   Wacker did not tell him.  (Opp. At 13.)  Even this assertion is belied by the evidence.  The e-

10  mails show that Wacker told Dozier that he was going to continue working with at least one

11  dealer, HB Contract (Barbara Miles).  (Wacker Decl. Exh. D.)  Dozier's response was that this

12  was not acceptable and that, other than three specific accounts with HB Contract, all orders need

13  to be handled by VFS.  (Id. at Exh. E.)  Thus, there is no evidence of concealment.

14                             b.       There is no Evidence of Reliance, Intent to Defraud or Damage

15          Even if Dozier can show that he did not know Wacker was getting commissions, he

16  cannot show that this caused him to change his behavior or that Wacker intended Dozier to

17  change his behavior.  The contract with Maispace specifically allows other representatives to sell

18  Maispace products, as long as VFS gets commissions on all sales.  Thus, Wacker making sales

19  did not cause Dozier any damage; Maispace not paying him did (if it was contractually obligated

20  to pay him.)

21          In short, Dozier does not support the claim plead, fraud by misrepresentation when

22  Wacker left VFS, and leave to amend to assert fraud by concealment is denied because there is

23  no evidence of concealment, reliance, intent to induce reliance or damage.  Accordingly,

24  Summary Judgment must be granted on Dozier's Fraud claim against Wacker.

25                   4.       Negligent Misrepresentation

26          As noted above, Negligent Misrepresentation requires: 1) a representation about a past or

27  existing material fact that was untrue; 2) and made without any reasonable ground for believing

28  it to be true, 3) with the intent to induce reliance, 4) actual reliance and 5) damages.  *See*

*Shamsian v. Atlantic Richfield Co.*, 107 Cal.App.4th 967, 983 (2003).  Dozier does not address this claim in opposition to Wacker's motion for summary judgment.  The First Amended Complaint alleges a misrepresentation that all rights and interests of VFS would remain with Dozier.  This is not a representation about a past or existing fact.  Therefore, the Negligent Misrepresentation claim fails because:  1) there is no representation about a past or existing material fact that was untrue; 2) therefore, there was no representation  made without any reasonable ground for believing it to be true; 3) there is no evidence of any intent to induce reliance, 4) and no actual reliance and 5) no damages.  Moreover, there is no cause of action for negligent false promise.  *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 159 (1991).  Accordingly, Summary Judgment is Granted on the Negligent Misrepresentation claim.

### 5.   Intentional Interference with Contract

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co., Inc. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55, (1998) (*quoting Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

Even assuming for purposes of this motion, that Wacker was aware of an exclusive contract between VFS and Maispace and that the partnership termination agreement precluded Wacker's sales, there is no evidence that Wacker intended to cause a breach or disruption between VFS and Maispace.  The contract between VFS and Maispace allowed other agents to sell Maispace products, as long as it paid VFS commission.  Thus, there is no evidence that Wacker interfered with VFS' contract with Maispace because there is no evidence that Wacker caused Maispace not to pay VFS.  Accordingly, summary judgment must be granted on this claim.

### 6.   Unfair Competition

Dozier asserts a claim for violation of California Business and Professions Code section

1   17200.  Dozier appears to be claiming that Wacker's collection of commissions from Maispace

2   when he knew VFS was the exclusive representative was an unfair business practice.  Dozier

3   argues that Wacker accepted a lower than usual commission and this is evidence that his actions

4   were unfair and wrong.

5           Wacker  moves for judgment because Dozier has failed to seek any available damages.

6   Section 17200 allows only disgorgement of profits, neither compensatory nor punitive damages

7   are recoverable.  *Industrial Indemnity Co. v. Santa Cruz County Superior Court*, 209 Cal.App.3d

8   1093, 1096 (1989).  Dozier opposes summary judgment, arguing that he has prayed for all

9   further relief the court deems just and proper, which includes disgorgement of profits.  Dozier

10  misunderstands the problem.  The problem is not merely that the complaint was not specific.

11  The problem is that disgorgement is only available as a remedy under section 17200 when it is

12  restitutionary, when the money to be disgorged came from the plaintiff.  *Kraus v. Trinity*

13  *Management Services, Inc.*, 23 Cal.4th 116, 126-27 (2000) (restitution must be "to return money

14  obtained through an unfair business practice . . . to persons who had an ownership interest in the

15  property.*"); Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal.App.4th 997, 1013 (2005).

16  Here, Dozier is seeking money from Wacker that Wacker did not get from Dozier.  At a

17  minimum, the Plaintiff must have a vested interest in the property.  A contingent interest in a

18  commission that might have been earned is not sufficient.  *Korea Supply Co. v. Lockheed Martin*

19  *Corp*., 29 Cal.4th 1134, 1148-50 (2003).

20          In *Korea Supply Co.,* the plaintiff was the broker for a manufacturer who bid

21  unsuccessfully on a contract.  If the manufacturer had been awarded the contract, the plaintiff

22  would have been entitled to a commission.  The broker sued the manufacturer that was awarded

23  the contract, claiming it used unfair methods to win the bid.  The court found that a broker's

24  interest in a commission not awarded was merely a contingent interest and, therefore,

25  disgorgement of the winning bidder's profits was not an available remedy.  Similarly, here, VFS

26  does not have a vested interest in commissions on sales made by Wacker that might have been

27  made by Dozier instead.  Thus, Dozier is seeking non-restitutionary disgorgement.

28          Accordingly, there is no relief under section 17200 available to Dozier and Summary

1  Judgment must be granted on this claim.

2
3
      **D.    Wacker's Motion for Summary Judgment on his Counterclaim for Breach of Termination Agreement**

4        Wacker is moving for summary judgment on his counterclaim that Dozier breached the

5  termination agreement.  Dozier concedes that he owes $950 to Wacker under the termination

6  agreement and accepts judgment, subject to offset by any damages for claims he might win.

7  Wacker opposes delaying payment until the conclusion of this lawsuit.  Without expressing any

8  opinion as to the likelihood of success of Dozier's claims, at this time, it makes sense to have the

9  $950 subject to offset and not due until after the conclusion of this lawsuit.  Accordingly,

10  Wacker's Motion for Summary Judgment on his Counterclaim for Breach of the Termination

11  Agreement is Granted in the amount of $950, subject to Dozier's right to offset the $950 due

12  against any relief Dozier wins in this lawsuit against Wacker.

13  **IV.   CONCLUSION**

14        For the foregoing reasons, IT IS HEREBY ORDERED that:

15          1.      Maispace's Motion for Partial Summary Judgement is Granted as to
16                 Dozier's Fraud and Negligent Misrepresentation claims.

17          2.      Wacker's Motion for Summary Judgement is Denied in Part as to Dozier's
18                 claims for Breach of Contract and Breach of the Implied Covenant of
19                 Good Faith and Fair Dealing;

20          3.      Wacker's Motion for Summary Judgement is Granted in Part as to
21                 Dozier's Claims for Fraud, Negligent Misrepresentation, Intentional
22                 Interference with Contract and Unfair Competition; and

23          4.      Wacker's Motion for Summary Judgment on his Counterclaim for Breach
24                 of the Termination Agreement is Granted.

25        IT IS SO ORDERED.

26  Dated:  February  13, 2007

*Patricia V. Trumbull*

27             PATRICIA V. TRUMBULL
           United States Magistrate Judge
28